# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

MEGHANN L. HAZEN,                           Case No. 1:21-cv-01965

        Plaintiff,

v.                                          JUDGE PAMELA A. BARKER

CLEVELAND CLINIC FOUNDATION,

                                      **MEMORANDUM OPINION & ORDER**

        Defendant.

This matter is before the Court upon the Motion for Partial Judgment on the Pleadings pursuant to Federal Rules of Civil Procedure 8(a) and 12(c) of Defendant The Cleveland Clinic Foundation ("Defendant") filed on February 11, 2022 ("Defendant's Motion").  (Doc. No. 10.)  On March 2, 2022, Plaintiff Meghann L. Hazen ("Plaintiff") filed a Brief in Opposition to Defendant's Motion ("Plaintiff's Opposition") (Doc. No. 11), to which Defendant replied on March 22, 2022 ("Defendant's Reply") (Doc. No. 13).

For the reasons set forth herein, Defendant's Motion is DENIED in part and GRANTED in part.

## I.  Background

### A.  Factual Allegations

Plaintiff's Complaint sets forth the following allegations.  Plaintiff was employed as a Patient Care Nursing Assistant at Defendant's hospital in Medina, Ohio (the "Hospital") beginning on September 11, 2017.  (Doc. No. 1 at 2.)  On July 22, 2019, Plaintiff was assisting a patient to the restroom when the patient began to fall.  (*Id.* at 3.)  Plaintiff attempted to stabilize the patient and placed her left foot in between the patient's foot and the walker.  (*Id.*)  The patient then fell and in

attempting to catch her, Plaintiff's leg became twisted and contorted causing serious injury to Plaintiff's knee.  (*Id.*)  Plaintiff's knee was then swollen and painful.  (*Id.*)

As a result of the injury, Plaintiff went to the Hospital's Emergency Room for treatment at the end of her shift.  (*Id.*)  Plaintiff was initially treated by Dr. Brent McCoy who referred her for physical therapy and then saw her one other time to receive a steroid injection for her injury, which did not improve her pain or mobility.  (*Id.*)  Plaintiff was told to make an appointment for further treatment with Cleveland Clinic AtWork, which she did within a day.  (*Id.*)  Plaintiff was then treated by Dr. Lutul Farrow at Cleveland Clinic AtWork and received physical therapy from September 3, 2019 through October 11, 2019.  (*Id.*)  Plaintiff continued to be treated by Dr. Farrow up until January 22, 2020, when he released her to full duty on January 23, 2020.  (*Id.*)  This injury caused Plaintiff to have a "complete change in her mannerisms and gait, which included a noticeable limp, much slower walking pace, and much more care while ambulating."  (*Id.* at 8.)

Plaintiff filed a worker's compensation claim which was allowed for a left knee strain on or about September 10, 2019.  (*Id.* at 4.)  On October 18, 2019, Plaintiff was examined by Holly Zienkowski, a nurse practitioner at Cleveland Clinic AtWork, who examined Plaintiff's work ability. (*Id.*)  During this visit, Ms. Zienkowski filled out and signed a Physician's Report of Work Ability form for Plaintiff that indicated that Plaintiff's work ability was restricted to "sitting/desk work." (*Id.*; Doc. No. 1-2.)  On the form, Ms. Zienkowski indicated that Plaintiff could return to full work duty on November 15, 2019.  (Doc. No. 1-2.)  Plaintiff was also scheduled a follow-up appointment for November 15, 2019.  (*Id.*)

2

Another version of this Physician's Report of Work Ability exists, which Plaintiff claims was "altered" and then "submitted" by Defendant.[1] (Doc. No. 1 at 4.) This altered form contains the signature of Dr. Amanda Hagen, by whom Plaintiff had not been "seen, evaluated, or treated." (*Id.* at 4-5.) Plaintiff alleges that this form did not contain any work restriction language or follow-up appointment date, but instead stated that Plaintiff was "discharged [to] full duty" on October 22, 2019.[2] (Doc. No. 1-3.) Plaintiff claims that "white-out" was used on various areas of the form to remove the information related to Plaintiff's work restrictions. (Doc. No. 1 at 5.)

Plaintiff received temporary total workers' compensation benefits initially and then was put on light duty work for just a couple of weeks until October 24, 2019, when she was informed by Defendant that it no longer had any light duty work for her. (*Id.* at 6.) Based on Defendant's representation that there was no more light duty work available, Plaintiff did not go back to work. (*Id.*) Rather than accommodate her, Plaintiff claims Defendant forced her to sit out of work on unpaid leave until her doctor cleared her to full duty. (*Id.*) On January 22, 2020, Dr. Farrow "clear[ed Plaintiff] to return to work full duty and without restrictions on January 23, 2020." (Doc. No. 1-4.) Plaintiff was not told that she was released to full duty at any time prior to January 22, 2020. (Doc. No. 1 at 6.) After Dr. Farrow cleared her to resume her full duties, Plaintiff then worked "at full duty without accommodation for seven (7) months while continuing to experience excruciating pain and mobility issues, causing her to resign from her employment" in August 2020. (*Id.*)

---

[1] The Court assumes Plaintiff is alleging that this alleged "submission" was made to the Bureau of Worker's Compensation, although it is not clear from the Complaint.

[2] A review of Exhibit B demonstrates that although the first page does not include a date of next appointment/examination, the second page still indicates that there is an "ortho fu 11/11." (Doc. No. 1-3.)

Plaintiff claims that during the course of her worker's compensation claim, Defendant hired a private investigator who followed her and "took unauthorized video surveillance" of her.  (*Id.*) Defendant admits that Plaintiff "was the subject of video surveillance conducted in connection with the defense of her workers' compensation claim against Defendant."  (Doc. No. 8 at 6.)  At one of her son's football games, Plaintiff was surveilled standing for the National Anthem, although she "was continuously rubbing her left knee and had to walk with a limp."[3]  (Doc. No. 1 at 7.)  Plaintiff claims she was also surveilled while tending to a flat tire, but because of her injury, she was not able to change the tire and instead merely bent down to spray "Fix-a-Flat" into the tire.  (*Id.*)  After bending down, Plaintiff experienced "considerable pain and her knee was swollen to the point she couldn't do any physical activity for two days after that."  (*Id.*)

**B.    Procedural History**

On or about July 17, 2020, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").  (Doc. No. 1 at 8.)  On July 20, 2021, the EEOC issued Plaintiff a Notice of Right to Sue.  (*Id.*; Ex. D.)  On October 18, 2021 Plaintiff filed a Complaint in this Court against Defendant alleging the following causes of action: (1) disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112-12117 (Count I); (2) disability discrimination in violation of Ohio Revised Code § 4112.01, *et seq.* (Count II); (3) violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (Count III); and (4) violation

---

[3] Plaintiff first alleges the surveillance during her son's football game took place on August 31, 2020, but two paragraphs later Plaintiff alleges that her friend was surveilled during the same game—on August 31, *2019.*  (Doc. No. 1 at 7, emphasis added.)  It is unclear from the face of the Complaint whether Plaintiff alleges that she was surveilled during her son's football game in 2019, prior to the allowance of her worker's compensation claim on September 10, 2019, or in 2020, after her resignation from her employment with Defendant.  (*See id.* at 6.)  Construing the allegations of the pleadings of the opposing party as true, *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007), the Court will presume this surveillance took place on August 31, 2019, prior to the allowance of her worker's compensation claim and prior to her August 2020 resignation.

of Ohio public policy (Count IV).  (*Id.* at 8-15.)  Defendant filed an Answer to Plaintiff's Complaint on January 20, 2022.  (Doc. No. 8.)  Defendant then filed the instant Motion for Partial Judgment on the Pleadings on February 11, 2022, seeking judgment as to Counts I, II, and IV of Plaintiff's Complaint.  (Doc. No. 10.)  Plaintiff filed a Brief in Opposition on March 2, 2022 (Doc. No. 11) to which Defendant replied on March 22, 2022.  (Doc. No. 13.)  Defendant's Motion is ripe for decision.

## II.    Standard of Review

Pursuant to Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  "For purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party must be taken as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment."  *JPMorgan Chase Bank, N.A. v. Winget*, 510 F.3d 577, 581 (6th Cir. 2007) (quoting *S. Ohio Bank v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 479 F.2d 478, 480 (6th Cir. 1973)).

The same standard for deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim applies to a Rule 12(c) motion for judgment on the pleadings.  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011).  In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'"  *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough

facts to state a claim to relief that is plausible on its face.'" *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555-56).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not necessary; the statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."'" *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)).  Nonetheless, while "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 679.

In ruling on a Rule 12(b)(6) or 12(c) motion, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett*, 528 F.3d at 430; *see also Brent v. Wayne Cnty. Dep't of Hum. Servs.*, 901 F.3d 656, 694 (6th Cir. 2018).

III.     **Analysis**

A.      **Federal ADA and State Disability Discrimination Claims**

Plaintiff's first cause of action alleges violations of the ADA based on disability or perceived disability under the following theories: (1) disability discrimination; (2) retaliation and coercion/interference; (3) hostile work environment; and (4) failure to accommodate. (Doc No. 1 at 8-10.) Plaintiff's second cause of action alleges violations of Ohio's disability discrimination statute based on theories of disability discrimination and hostile work environment. (*Id.* at 10-12.)

The ADA prohibits employers from "discriminat[ing] against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Ohio law similarly prohibits "any employer, because of the . . . disability . . . of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." Ohio Rev. Code Ann. § 4112.02(A).

When a plaintiff makes claims under both the federal ADA and Ohio disability law, "the case law instructs that both claims are generally subject to the legal analysis applicable to federal ADA claims." *Cox v. True N. Energy, LLC*, 524 F. Supp. 2d 927, 943 (N.D. Ohio 2007); *see also Martin v. Barnesville Exempted Vill. Sch. Dist. Bd. of Educ.*, 209 F.3d 931, 934 n.2 ("Both federal and Ohio

discrimination actions require the same analysis.").  Accordingly, the Court will analyze Plaintiff's federal ADA and state disability discrimination claims together.

### 1.     Disability Discrimination

Plaintiff's first and second causes of action allege violations of the ADA and Ohio Revised Code § 4112.01, *et seq.* under a theory of disability discrimination.  Defendant argues that Plaintiff's Complaint fails to allege facts that: (1) Plaintiff was disabled or perceived as disabled by Defendant; (2) Plaintiff was a qualified individual; (3) Plaintiff was replaced or treated less favorably than similarly situated, non-disabled employees; and (4) Defendant took adverse action against her because of her disability or perceived disability.  (Doc. No. 10 at 3-6.)  Plaintiff argues that she has plausibly alleged the elements of a disability discrimination claim.  (Doc. No. 11 at 7-14.)

To state a claim of disability discrimination under the ADA, a plaintiff "must plead facts that make plausible the inference that (1) she is disabled, (2) she is qualified to perform her job requirements with or without reasonable accommodation," and (3) she suffered an adverse employment action because of her disability.  *Darby v. Childvine, Inc.*, 964 F.3d 440, 444 (6th Cir. 2020); *see also Holiday v. City of Chattanooga*, 206 F.3d 637, 642 (6th Cir. 2000); *Mishak v. Serazin*, 2018 WL 747106, at *7 (N.D. Ohio Feb. 7, 2018).

As a threshold matter, however, Plaintiff is not required to "allege facts establishing a prima facie case of disability discrimination to survive" at the pleading stage.  *Morgan v. St. Francis Hosp.*, 2019 WL 5432041, at *1 (6th Cir. Oct. 3, 2019) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510-12 (2002)).  Rather, as the Supreme Court unanimously held, the prima facie case under the well-known *McDonnell Douglas* framework "is an evidentiary standard, not a pleading requirement." *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz*, 534 U.S. at 510).

Plaintiff "need only 'give the defendant fair notice of what [her] claim is and the grounds upon which it rests.'" *Morgan*, 2019 WL 5432041, at *1 (quoting *Swierkiewicz*, 534 U.S. at 512) (alteration in original).[4]

In *Morgan*, for example, the Sixth Circuit reversed a district court order dismissing the plaintiff's failure to accommodate and disability discrimination claims and determined that the plaintiff had adequately stated those claims simply because she had checked boxes on the form complaint indicating a "failure to accommodate" and further stated that the defendant "failed to provide [her] light or limited duty (transitional work) as requested." *Id.* at *2.  The Sixth Circuit held that those facts alone were "at least as detailed as those the Supreme Court found 'easily satisfie[d] the requirements of' notice pleading in *Swierkiewicz*." *Id.* (quoting *Swierkiewicz*, 534 U.S. at 514) (alteration in original).

The Court concludes that Defendant's argument that Plaintiff failed to allege facts that she was replaced or treated less favorably than similarly situated, non-disabled employees is premature. Being replaced or treated less favorably than similarly situated, non-disabled employees is an element of the *McDonnell Douglas* burden-shifting framework.  *See e.g.*, *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).  As previously explained, that framework is analyzed as an

---

[4] The Sixth Circuit further noted in *Keys*: "The Supreme Court's subsequent decisions in *Twombly* and *Iqbal* did not alter its holding in *Swierkiewicz*.  *Twombly* distinguished *Swierkiewicz*, explaining that the prior case 'did not change the law of pleading,' but simply reemphasized that application of the *McDonnell Douglas* prima facie case at the pleading stage 'was contrary to the Federal Rules' structure of liberal pleading requirements.'" *Keys*, 684 F.3d at 609 (quoting *Twombly*, 550 U.S. at 570).  Since *Twombly* and *Iqbal*, the Sixth Circuit has "recognized the continuing viability of *Swierkiewicz*'s holding."  *Id.*; *see, e.g.*, *Pedreira v. Ky. Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (holding that the *McDonnell Douglas* prima facie case is not a pleading requirement and that "the ordinary rules for assessing the sufficiency of a complaint apply"); *Back v. Hall*, 537 F.3d 552, 558 (6th Cir. 2008) (same); *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 614 (6th Cir. 2012) (noting that it would be "inaccurate to read [*Twombly* and *Iqbal* ] so narrowly as to be the death of notice pleading and [] recogniz[ing] the continuing viability of the 'short and plain' language of Federal Rule of Civil Procedure 8").

"evidentiary standard, not a pleading requirement."  *Keys*, 684 F.3d at 609.  Accordingly, Plaintiff

need only allege facts that support a plausible inference of disability discrimination, not the elements

of a prima facie case under *McDonnell Douglas*.  *See id.* at 610.  As such, Defendant's argument that

Plaintiff failed to allege facts that she was replaced or treated less favorably than similarly situated,

non-disabled employees is without merit.

> ### a.    Did Plaintiff plead facts that make plausible the inference that she was disabled?

"An individual is considered 'disabled' under the ADA if he or she: '(A) [has] a physical or

mental impairment that substantially limits one or more of [his or her] major life activities . . .; (B)

[has] a record of such an impairment; or (C) [is] regarded as having such an impairment.'"  *Burns v.*

*Coca-Cola Enters., Inc.*, 222 F.3d 247, 252 (6th Cir. 2000) (quoting 42 U.S.C. § 12102(2) (alterations

in original)).  "The term 'substantially limits' shall be construed broadly in favor of expansive

coverage, to the maximum extent permitted by the terms of the ADA."  29 C.F.R. § 1630.2(j)(1)(i).

In fact, "'[s]ubstantially limits' is not meant to be a demanding standard."  *Id.*  "Major life activities"

include "walking, standing, sitting, reaching, lifting, [and] bending."  *Id.* at § 1630.2(i)(1)(ii).

Here, Plaintiff has adequately alleged facts that allow the Court to draw a reasonable inference

that Plaintiff was disabled or perceived as disabled by Defendant.  Plaintiff's Complaint alleges that

she experienced a "serious injury" to her left knee while at work; she was treated at Defendant's

AtWork Clinic; her injury required a steroid injection and physical therapy; her work was restricted

to "sitting or desk work" as a result of the injury; she experienced "excruciating pain and mobility

issues" that caused her to "walk with a limp," considerable pain and swelling after bending over, and

a "complete change in her mannerisms and gait."  (Doc. No. 1 at 3-8.)  In other words, Plaintiff has

alleged several facts that indicate she suffered from issues with walking and bending as a result of

her knee injury.  (*Id.*)  Walking and bending are considered major life activities under 29 C.F.R. § 1630.2(i)(1)(ii).  Thus, Plaintiff has alleged that she suffered from impairments of at least two major life activities.  These allegations are sufficient to claim that Plaintiff was disabled.

Any further examination of the Complaint to determine if Plaintiff is legally disabled under the ADA is a "fact-based inquiry and determination that 'is not generally motion to dismiss territory.'"  *Cox*, 524 F. Supp. 2d at 944 (quoting *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959 (7th Cir. 1996)).

The unreported cases relied upon by Defendant do not alter the Court's position as they are distinguishable.  In *Al-Janabi v. Wayne State University*, 2021 WL 1224205, at *4 (E.D. Mich. Apr. 1, 2021), the court dismissed the *pro se* plaintiff's ADA claim when the "complaint stated only that there was a 'Violation of ADA law, section 504.'"  *Id.*  Unlike the case here, the plaintiff's complaint in *Al-Janabi*, did "not identify even a coherent legal position, let alone substantive elements of a cause of action."  *Id.*  In *Currie v. Cleveland Metropolitan School District*, 2015 WL 4080159, at *4 (N.D. Ohio July 6, 2015), the *pro se* plaintiff's complaint "fail[ed] to mention the ADA," let alone "identify a disability or impairment."  *Id.*  That is not the case here.  Further, in *Alessio v. United Airlines*, 2018 WL 6064866, at *2 (N.D. Ohio Nov. 20, 2018), the *pro se* plaintiff's complaint alleged that "air travelers, generally, are being exposed to harmful chemicals that could result in some unidentified disability."  *Id.*  The court in *Alessio* determined that such an allegation failed to support a finding that the plaintiff was an individual with a disability.  *Id.*  Again, such is not the case here as Plaintiff has identified a physical disability associated with her left knee that caused her severe mobility issues.  (Doc. No. 1 at 3-8.)  In *Davis v. CEVA Logistics*, 2013 WL 434051, at *3 (S.D. Ohio Feb. 5, 2013), the court held that the plaintiff failed to adequately allege that he was substantially

11

limited in a major life activity.  *Id.*  Likewise, in *Inman v. Edwin Shaw Rehab, LLC*, 2013 WL 5966177, at *3 (N.D. Ohio Nov. 8, 2013), plaintiff's complaint only alleged that he was "an individual diagnosed with a psychological impairment that substantially limits one or more major life activities," but failed to allege facts to identify his impairment or how that impairment impacted any major life activities.  *Id.*

Here, Plaintiff has alleged that she had issues walking and bending as a result of her knee injury, which are considered major life activities under 29 C.F.R. § 1630.2(i)(1)(ii).  Thus, Plaintiff has adequately alleged that she was substantially limited in a major life activity, and thus, disabled.[5]

> **b.  Did Plaintiff plead facts that make plausible the inference that she was a qualified individual?**

"To state a claim of discrimination under the ADA, [Plaintiff] must plead facts that make plausible the inference that . . . she is qualified to perform her job requirements with or without reasonable accommodation . . . ."  *Darby*, 964 F.3d at 444.  Here, Plaintiff has adequately alleged facts that allow the Court reasonably infer that she was a "qualified individual."  Plaintiff has alleged that Defendant provided her with an initial period of reasonable accommodations—specifically of light duty, restricted to "sitting or desk work"—which Defendant then unilaterally removed when it allegedly altered Plaintiff's original Physician's Report of Work Ability form.  (Doc. No. 1 at 4-6, 9-10; Doc. No. 1-2; Doc. No. 1-3.)  Because Plaintiff alleged that she was able to do her job during that

---

[5] Because the Court has determined that Plaintiff adequately pleaded facts regarding being disabled or being perceived as disabled by Defendant, the Court will not address Defendant's argument that Plaintiff's descriptions regarding her worker's compensation claims process do not "excuse or replace the requirement to adequately plead a disability under the ADA."  (Doc. No. 10 at 5.)

initial period of accommodation, the Court can plausibly infer that Plaintiff was a qualified individual under the ADA.

### c. Did Plaintiff plead facts that make plausible the inference that she suffered an adverse employment action because of her disability?

To recover on an ADA claim, Plaintiff must also plausibly allege that she suffered an adverse employment action because of her disability. *Mishak*, 2018 WL 747106, at *7 (relying on *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891 (6th Cir. 2016) (reversed on other grounds)). Failing to offer a reasonable accommodation constitutes an adverse action. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019) ("'failing to make a reasonable accommodation falls within the ADA's definition of "discrimination,"' meaning 'an employer's failure to offer a reasonable accommodation necessarily' involves an adverse action" (quoting *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868-69 (6th Cir. 2007)).

Here, the Court notes that Plaintiff is vague in both her Complaint and Opposition as to the precise adverse actions that she allegedly experienced. (*See generally* Doc. No. 1; Doc. No. 11 at 13-14.) Defendant dedicates only one sentence to disputing causation—that an adverse action did not occur *because of* Plaintiff's disability, not that no adverse action occurred. (*See* Doc. No. 10 at 6.) Based on the Court's reading of the Complaint, the Court construes Plaintiff's Complaint to allege two distinct adverse employment actions: (1) Defendant's denial of a reasonable accommodation while Plaintiff was on work restrictions from October 2019 to January 2020; (2) Plaintiff's constructive discharge in August 2020, after she returned to full work duty in January 2020. Plaintiff has sufficiently alleged facts as to the first adverse action, but not the second.

As to Defendant's denial of Plaintiff's reasonable accommodations while she was on work restrictions from late October 2019 to January 2020, Plaintiff alleges that she was examined by a

13

nurse practitioner on October 18, 2019 at Defendant's AtWork facility.  (Doc. No. 1 at 4.)  The nurse practitioner noted on the Physician's Report of Work Ability form that Plaintiff was on work restrictions for "sitting or desk work."  (*Id.*)  Plaintiff further alleges that Dr. Hagen, who had never examined or treated Plaintiff, unilaterally altered the Physician's Report of Work Ability form to remove Plaintiff's "sitting or desk work" restrictions and released her to full duty as of October 22, 2019.  (*Id.* at 4-5.)  Plaintiff alleges that Defendant "purposefully altered" this form "to remove work restrictions and avoid having to provide accommodations" to Plaintiff.  (*Id.* at 5.)  Prior to Dr. Hagen's alteration of Plaintiff's form, Defendant had provided Plaintiff "light duty work" for a "couple of weeks."  (*Id.* at 6.)  Defendant then informed Plaintiff that "it no longer had any light duty work for her" on October 24, 2019.  (*Id.*)  Plaintiff was not released to full work duty by her orthopedist at Defendant's AtWork facility until January 23, 2020.  (*Id.*)  Between October 24, 2019 and January 23, 2020, Plaintiff alleges that she was forced to remain at home and out of work with no pay because she was not released to return to full work, yet Defendant refused to provide her with additional light duty work.  (*Id.* at 4-6.)  Plaintiff has sufficiently alleged facts that she experienced an adverse action because of her disability when Defendant denied her work accommodations from October 24, 2019 to when she was released to full duty on January 23, 2020.

The unpublished case law cited by Defendant here is distinguishable.  The only fact the plaintiff in *Khatri v. Ohio State University*, 2022 WL 620147, at *3 (6th Cir. Jan. 25, 2022) alleged to support his argument that he was perceived as disabled was that he was required to complete a fitness-for-duty examination.  *Id.*  Fitness-for-duty examinations, however, are "not sufficient to demonstrate a perception of disability."  *Id.*  Further, the court held that the plaintiff "did not allege *any* facts establishing a connection between the alleged perception of disability and any adverse

employment action, and he passed the fitness-for-duty exam more than a year before his employment was terminated." *Id.* (emphasis added).  Similarly, the court in *Nigam v. Wright State University*, 2018 WL 3148344, at *6 (S.D. Ohio June 26, 2018) determined that the plaintiff failed to allege facts that those responsible for her dismissal were aware of her disability, and thus the plaintiff failed to establish a causal connection.  Here, however, Plaintiff has alleged facts establishing a connection between her disability, which Plaintiff adequately alleges Defendant was aware of because of her treatment at Defendant's AtWork facility, and Defendant's refusal to accommodate her while she was on work restrictions.

Plaintiff does not, however, sufficiently allege facts to claim that she experienced an adverse employment action after she was released to full work duty on January 23, 2020.  Plaintiff alleges that she was "constructively discharged" in August 2020 when she was forced to resign due to her "excruciating pain and mobility issues." (*Id.*)  Plaintiff does not, however, allege that she requested an accommodation after January 23, 2020, nor does she allege that Defendant denied any such accommodation.  Plaintiff also does not allege that Defendant was at all aware of her "excruciating pain and mobility issues," so as to create any inference that she was "constructively discharged." Without such allegations, the Court cannot plausibly infer that Plaintiff experienced an adverse action because of her disability after she was released by her doctor to full duty on January 23, 2020.

Accordingly, the Court concludes that Plaintiff alleged sufficient facts to proceed upon her claims of disability discrimination as to Defendant's failure to accommodate Plaintiff from October

24, 2019 to January 23, 2020.  Plaintiff has not alleged sufficient facts to proceed upon her claims of disability discrimination as to any alleged adverse actions that occurred after January 23, 2020.

### 2.    Failure to Accommodate

In her first cause of action, Plaintiff also alleges a violation of the ADA based upon a theory of a failure to accommodate.  (Doc. No. 1 at 9.)  Defendant argues that Plaintiff's Complaint fails to allege facts that: (1) Plaintiff had a disability; (2) Plaintiff was qualified to perform the essential functions of her position with or without a reasonable accommodation; (3) Plaintiff requested an accommodation; (4) Plaintiff's accommodation would afford her the ability the perform the essential functions of her position; or that (5) Defendant denied Plaintiff such an accommodation.  (Doc. No. 10 at 7.)

An employer discriminates under the ADA when it does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."  42 U.S.C. § 12112(b)(5)(A).

> To assert a failure to accommodate claim, Plaintiffs must plausibly allege that they are (1) disabled, yet (2) otherwise qualified for the position despite their disability: (a) without accommodation from the employer; (b) with an alleged essential job requirement eliminated; or (c) with a proposed reasonable accommodation; (3) that their employer was aware of their disability; (4) that they requested an accommodation; and (5) that their employer failed to provide the requested reasonable accommodation.

*Schobert v. CSX Transp. Inc.*, 504 F. Supp. 3d 753, 791-92 (N.D. Ohio 2020) (citing *Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 811 (6th Cir. 2020)).

The Court has already determined that Plaintiff sufficiently alleged that she had a disability, and that she was otherwise qualified for her position with a reasonable accommodation.

16

As to the third factor, Plaintiff has adequately alleged facts that allow the Court to plausibly infer that Defendant was aware of her disability.  Plaintiff experienced her injury while at work; she was treated at Defendant's AtWork facility; Defendant initially assigned Plaintiff to light duty work as a result of her injury; and it was a doctor and nurse practitioner at Defendant's AtWork facility who indicated that Plaintiff had work restrictions because of her injury.  (Doc. No. 1 at 3-6.)  These facts are sufficient to infer that Defendant was aware of Plaintiff's disability.

As to the fourth factor, Plaintiff has adequately alleged facts that allow the Court to plausibly infer that Plaintiff requested an accommodation.  The Sixth Circuit has held that a "request for accommodation by an employee *or her physician* triggers the employer's statutory duty reasonably to accommodate the employee's condition." *Trepka v. Bd. of Educ. of Cleveland City Sch. Dist.*, 28 F. App'x 455, 459 (6th Cir. 2022) (emphasis added).  Plaintiff alleges that a nurse practitioner at Defendant's AtWork facility noted in her original Physician's Report of Work Ability form that she was restricted to "sitting or desk work" as of October 18, 2019.  (Doc. No. 1 at 4.)  Plaintiff further alleges that her orthopedist at Defendant's AtWork facility did not release her to full work duty until January 23, 2020.  (*Id.* at 6.)  These allegations are sufficient to support an inference that Plaintiff requested an accommodation from Defendant through her doctors.

As to the fifth factor, Plaintiff has adequately alleged facts that allow the Court to plausibly infer that Defendant failed to provide the requested reasonable accommodation.  Plaintiff alleges that Defendant did, in fact, initially accommodate her and assigned her "light duty" for a "couple of weeks," but then unequivocally revoked such work on October 24, 2019.  (*Id.* at 6.)  Because Defendant no longer offered her light duty, Plaintiff could not work and had to stay home without pay until she was released to full work duty by her doctor on January 23, 2020.  (*Id.*)  These allegations

are sufficient for the Court to plausibly infer that Defendant failed to provide Plaintiff a reasonable accommodation from October 24, 2019 to January 23, 2020.

To the extent, however, Plaintiff is claiming she was denied an accommodation after January 23, 2020, Plaintiff has failed to sufficiently plead facts to support such a claim for the same reason that claim fails under the disability discrimination framework as discussed *supra*.

Accordingly, Plaintiff has sufficiently alleged facts to support a claim for failure to accommodate from October 24, 2019 to January 23, 2020.

### 3.      Hostile Work Environment

Plaintiff's first and second causes of action also allege violations of the ADA based upon a theory of a hostile work environment.  (Doc. No. 1 at 9.)  Defendant argues that Plaintiff failed to allege facts that support that she was disabled, and that "she was harassed at all, let alone that such harassment was based on her disability, was severe or pervasive enough to alter the conditions of her employment, or that [Defendant] knew of any such harassment and failed to take corrective measures."  (Doc. No. 10 at 9.)  The Court agrees with Defendant.

To recover under a claim for a hostile work environment under the ADA, Plaintiff must show that: "(1) she was disabled; (2) she was subject to unwelcome harassment; (3) the harassment was based on her disability; (4) the harassment unreasonably interfered with her work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka*, 28 F. App'x at 461.

Plaintiff fails to allege any facts that she experienced alleged harassment that unreasonably interfered with her work performance.  Plaintiff appears to allege that the alteration of her Physician's Report of Work Ability form and the surveillance videos taken at the gas station, her minor children's

18

football games, and her minor children's school constitute harassment.  (Doc. No. 11 at 18.)  However, Plaintiff fails to explain how these allegedly harassing activities interfered with her work performance in any way.  Without deciding whether that conduct is severe and pervasive enough to constitute harassment, the Court concludes that Plaintiff has failed to allege any facts to support the allegation that the harassment "unreasonably interfered with her work performance."  Rather, the alteration of the form seems to not at all impacted her work (as opposed to interfering with Defendant's providing of a reasonable accommodation), and the video surveillance took place solely outside of the workplace.   Plaintiff pleads no facts to support an inference that any of those incidents interfered with her ability to do her job.  Because Plaintiff's claim fails on this ground, the Court need not examine the other factors necessary to plead a claim of hostile work environment

Accordingly, Plaintiff has failed to sufficiently allege facts to support a claim of a hostile work environment under the ADA.

### 4.       Retaliation

Plaintiff's first cause of action also alleges a violation of the ADA based upon a theory of retaliation.  (Doc. No. 1 at 9.)   Defendant argues that Plaintiff has failed to offer sufficient factual allegations to identify the protected activity upon which her claim is based, the adverse action that resulted, or any causal nexus between the two.  (Doc. No. 10 at 10.)

> To state a retaliation claim under the ADA, the plaintiff must plead facts showing that (1) the plaintiff engaged in activity protected by the ADA; (2) the defendant knew of that activity; (3) the defendant took an adverse action against plaintiff; and (4) the adverse action was caused or motivated by the protected activity.

*Mich. Flyer, LLC v. Wayne Cnty. Airport Auth.*, 138 F. Supp. 3d 899, 902 (E.D. Mich. 2015) (citing *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014)).  The Court concludes that Plaintiff has sufficiently pleaded a retaliation claim under the ADA.

19

First, requesting an accommodation is considered "protected activity" under the ADA. *Baker v. Windsor Republic Doors*, 414 F. App'x 764, 776 (6th Cir. 2011). The Court has already determined that Plaintiff requested an accommodation through her doctor and nurse practitioner at Defendant's AtWork facility. *See supra.* Accordingly, the Court finds that Plaintiff has sufficiently alleged facts that she engaged in activity protected by the ADA when her care providers requested an accommodation on Plaintiff's behalf.

Second, Plaintiff has sufficiently alleged facts that Defendant was aware of Plaintiff's protected activity, as it was Defendant's employees at Defendant's AtWork facility who noted such an accommodation was needed.

Third, the Court has already determined that Plaintiff sufficiently alleged facts that support an inference that Defendant took an adverse action against Plaintiff by failing to provide her a reasonable accommodation.

Lastly, Plaintiff has alleged sufficient facts to support an inference that Defendant's refusal to offer her a reasonable accommodation was caused or motivated by Plaintiff's protected activity. Plaintiff alleges that Dr. Hagen, who had not seen, treated or evaluated Plaintiff, unilaterally revised Plaintiff's Physician's Report of Work Ability form to avoid having to continue to accommodate Plaintiff by providing her with additional light duty. (Doc. No. 1 at 3-6.)

Accordingly, Plaintiff has pleaded sufficient facts to allege a claim of retaliation under the ADA.

### 5. Interference

Plaintiff's first cause of action also alleges a violation of the ADA based upon a theory of interference. (Doc. No. 1 at 9.) Defendant argues that Plaintiff failed to allege that she has a disability

20

or that an unlawful motivation existed.  (Doc. No. 10 at 11.)  Defendant also argues that Plaintiff's allegations that Defendant's conduct "led to her constructive discharge is bare, conclusory, and again belied by admissions in her own Complaint."  (*Id.*)

> The ADA prohibits interference, coercion, or intimidation:
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203(b).  Whereas a retaliation claim is based on retaliatory animus (i.e., because of a protected activity), an interference claim is based on discriminatory intent (i.e., because of plaintiff's disability).  A claim alleging interference under the ADA requires pleading allegations that a defendant exhibited "discriminatory animus."  *Youngblood v. Prudential Ins. Co.*, 706 F. Supp. 2d 831, 840 (M.D. Tenn. 2010).  Any interference "must have been taken because of plaintiff's alleged disability, and *not* because of their desire to avoid paying benefits to which plaintiff alleges her entitlement."  *Id.* (emphasis added).

The Court concludes that Plaintiff failed to sufficiently allege facts that allow the Court to draw a reasonable inference that any alleged actions by Defendant to interfere were taken because of Plaintiff's disability, as opposed to taken to avoid accommodating Plaintiff.  Plaintiff pleads no facts that support an inference that Defendant exhibited a discriminatory animus towards Plaintiff because of her disability.

Accordingly, Plaintiff has failed to plead sufficient facts to allege a claim of interference under the ADA.

### B.    Violation of Ohio Public Policy

Plaintiff's fourth cause of action alleges that Defendant constructively discharged her in violation of Ohio public policy.  (Doc. No. 1 at 14.)  Specifically, Plaintiff alleges that Defendant's "constructive discharge of [Plaintiff] violates Ohio public policy against the discrimination of Ohio Citizens on the basis of disability/perceived disability in employment embodied in R.C. Chapter 4112, *et seq.* and the ADA."  (*Id.*)  Defendant argues that Plaintiff's claim fails because (1) the ADA and Ohio Revised Code Chapter 4112 provide adequate statutory remedies, and (2) Plaintiff has failed to allege sufficient facts to establish a wrongful discharge in violation of public policy claim.  (Doc. No. 10 at 13-14.)  The Court agrees that the ADA provides adequate statutory remedies to Plaintiff's claim, and thus, Plaintiff's public policy claim must fail.

"[I]t is well-established that wrongful discharge in violation of state public policy claims fail where other statutes provide adequate protection and remedies."  *Chenzira v. Cincinnati Children's Hosp. Med. Ctr.*, 2012 WL 6721098, at *4 (S.D. Ohio Dec. 27, 2012).  When a plaintiff bases a wrongful termination claim on the claim that her termination violated the ADA, Plaintiff "cannot bring the same claim under Ohio common law."  *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 708 (S.D. Ohio 2014); *see also Carrasco v. NOAMTC Inc.*, 124 F. App'x 297, 304 (6th Cir. 2004) ("Because Carrasco has a remedy available to him under both Title VII and the OCRA, we find that he cannot have that same claim under Ohio common law."); *Schirmer v. Enerfab, Inc.*, 2006 WL 2612894, at *13-14 (S.D. Ohio Sept. 8, 2006) (barring a public policy claim premised on a violation of the ADA); *Barton v. Air Express Intern. USA, Inc.*, 2007 WL 851882, at *2 (N.D. Ohio Mar. 19, 2007) (dismissing public policy claim where plaintiff had adequate remedies under the ADA, as well as Ohio Rev. Code § 4112 and Title VII).

Because Plaintiff has adequate remedies under the ADA, she is unable to bring the same claim under Ohio's wrongful termination in violation of public policy tort.

Even if Plaintiff could bring the same claim under Ohio's wrongful termination in violation of public policy tort, Plaintiff's claim fails for the same reasons her ADA and Ohio law claims based on the theory of disability discrimination fails—Plaintiff has offered no facts to support her assertion that Defendant took any action (or no action) as a result of its knowledge of Plaintiff's alleged disability after January 23, 2020.  *See supra.*  Specifically, Plaintiff alleges no facts to support an assertion that Defendant had knowledge of her disability, that she requested any further accommodations, or that Defendant denied any such accommodations as to result in her constructive discharge.  *See supra.*  Without those facts, Plaintiff cannot state a claim for which relief can be granted as to a wrongful discharge in violation of public policy claim.

Accordingly, Defendant's motion is granted with respect to Plaintiff's fourth cause of action.

### IV.  Conclusion

Accordingly, and for all the reasons set forth above, Defendant's Motion for Partial Judgment on the Pleadings (Doc. No. 7) is DENIED in part and GRANTED in part, as follows:

- Defendant's Motion to Dismiss Plaintiff's first and second causes of action based on the theory of disability discrimination as to Defendant's failure to accommodate Plaintiff from October 24, 2019 to January 23, 2020 is DENIED;

- Defendant's Motion to Dismiss Plaintiff's first and second causes of action based on the theory of disability discrimination as to any alleged adverse actions that occurred after January 23, 2020 is GRANTED;

- Defendant's Motion to Dismiss Plaintiff's first cause of action based on the theory of a failure to accommodate Plaintiff from October 24, 2019 to January 23, 2020 is DENIED;

- Defendant's Motion to Dismiss Plaintiff's first cause of action based on the theory of a failure to accommodate Plaintiff after January 23, 2020 is GRANTED;

- Defendant's Motion to Dismiss Plaintiff's first and second causes of action as based on the theory of a hostile work environment is GRANTED;

- Defendant's Motion to Dismiss Plaintiff's first cause of action as based on the theory of retaliation is DENIED;

- Defendant's Motion to Dismiss Plaintiff's first cause of action as based on the theory of interference is GRANTED; and

- Defendant's Motion to Dismiss Plaintiff's fourth cause of action is GRANTED.

**IT IS SO ORDERED.**

Dated: July 29, 2022                                  *s/Pamela A. Barker*
                                                     PAMELA A. BARKER
                                                     U.S. DISTRICT JUDGE